# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GLORIA T. JENNINGS,

      Plaintiff,

vs.                                                                    No. CIV 17-0359 JB/SCY

JAMES GRAYSON, San Miguel County
District Attorney,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Complaint (Tort), filed February 22, 2017 (Doc. 1-2)("Complaint"); and (ii) the Defendant's Motion to Dismiss, filed March 24, 2017 (Doc. 5). Plaintiff Gloria Jennings is incarcerated and appears pro se. She asserts Defendant James Grayson violated her constitutional right to privacy and the Health Insurance Portability and Accountability Act, 110 Stat. 1936 ("HIPAA"), when he disclosed her medical information during a hearing. Because the Court concludes Grayson is entitled to prosecutorial immunity, the Court will dismiss the case for failure to state a claim under 28 U.S.C. § 1915A and rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court takes its recitation of facts from the Complaint -- which Jennings originally filed in the Thirteenth Judicial District Court, County of Cibola, State of New Mexico ("State Court") -- and from the official New Mexico court records in Jennings' state criminal case, No. D-412-CR-2016-00026. See Complaint ¶ 1, at 1;[1] United States v. Ahidley, 486 F.3d 1184, 1192

---

[1] When citing pages in the Complaint, the Court will use the CM/ECF's pagination, i.e., the blue number in the top right corner of each page, because the Complaint lacks pagination.

n.5 (10th Cir. 2007)(stating that courts have "discretion to take judicial notice of publicly-filed records . . . and certain other courts concerning matters that bear directly upon the disposition of the case at hand").    Stack v. McCotter, 2003 WL 22422416, at *8 (10th Cir. 2003)(unpublished)(concluding that a state district court's docket sheet was an official court record subject to judicial notice under rule 201 of the Federal Rules of Evidence); Shoulders v. Dinwiddie, 2006 WL 2792671, at *3 (W.D. Okla. 2006)(Cauthron, J.)(noting that courts may take judicial notice of state court records available on the internet, including district court docket sheets).

On February 5, 2016, the State of New Mexico filed a complaint against Jennings for: (i) aggravated flight from a law enforcement officer; (ii) reckless driving; (iii) speeding; (iv) driving without a license; (v) possession of drug paraphernalia; and (vi) possession of marijuana or synthetic cannabinoids.  See Grayson v. Jennings, Criminal Complaint, No. D-412-CR-2016-00026, filed in state court February 5, 2016.  The arraignment took place about two weeks later before the Honorable Gerald Baca, District Judge, City of Las Cruces, Fourth Judicial District, State of New Mexico.  See Minutes of Arraignment, No. D-412-CR-2016-00026, filed in state court on February 17, 2016 ("Minutes").  Jennings appeared through counsel as the criminal defendant, and Grayson appeared as the State of New Mexico prosecutor.  See Minutes ¶ 5, at 2; id. ¶ 2, at 3.  At the arraignment, Jennings indicated that she had not received any medications for her mental health issues since her arrest.  See Minutes of Arraignment, No. D-412-CR-2016-00026, 11:10:00 A.M.

On April 20, 2016, the parties attended a plea conference.  See Complaint ¶ 5, at 2; Minutes of April 20, 2016 Plea Conference ("Plea Minutes").  The parties advised that they were not able to reach a plea agreement.  See Plea Minutes at 11:21:48 A.M. - 11:22:36 A.M.

Jennings also argued that the San Miguel County Detention Facility failed to correctly administer certain prescription medications and requested an order directing San Miguel County Detention Facility to remedy the failure. See Complaint ¶ 5, at 2; id. ¶ 2, at 3. The Plea Minutes contain the following summary of her statements:

> I have wrote [sic] numerous letters; need medication; mental health meds; blood pressure medications; I have talked to the major; I am not getting medications; they say my health insurance does not cover in this State[;] does not know if there is a break down [sic] in communication; not getting medication; I am sitting in segregation because of my behavior; I need my medication; that is how this case came about in the first place; asking for a Court order; they are not narcotics[;] I have not got any of them[.]

Minutes at 11:23:18 A.M. - 11:25:38 A.M.

Grayson disagreed and allegedly recited, in open court, the names of Jennings' medications. See Complaint ¶ 5, at 2; id. ¶ 2, at 3. The Minutes summarize his statements as follows:

> [T]he State has received a medical report; it contradicts what she says; they have attempted to contact health providers[;] she was provided high blood pressure medications; this report goes through early March; it appears there has been a responses by the detention center; no issues because of costs; it is a matter of confirming information[.]

Plea Minutes at 11:25:42 A.M. - 11:26:09 A.M. Jennings asserts she never consented to the State of New Mexico accessing her medical records. See Complaint ¶ 5, at 2; id. ¶ 2, at 3-4.

Jennings filed the Complaint in this case in the State Court on February 10, 2017. See Complaint ¶ 1, at 1. She seeks $25,000.00 in punitive damages based on Grayson's alleged violation of HIPAA and her constitutional right to privacy. See Complaint ¶ 1, at 1; id. ¶ 5, at 2; id. ¶ V, at 5. Jennings used a form tort complaint, which states: "This is a tort suit authorized by the New Mexico Tort Claims Act, Chapter 41 N.M.S.A., by a corrections department prisoner who seeks damages . . . ." Complaint ¶ 1, at 1. It is unclear what, if any, New Mexico tort

claims Jennings wishes to pursue, as the remainder of the Complaint focuses on HIPAA and the Constitution of the United States of America.  <u>See</u> Complaint ¶ 1, at 1; <u>id.</u> ¶ 5, at 2; <u>id.</u> ¶ 2, at 3-4.  Applying a liberal construction, the Court interprets Jennings' argument that Grayson violated her "constitutional right to privacy" as a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States of America.  <u>See</u> <u>United States v. Rodella</u>, 2015 WL 711931, at *28 (D.N.M. 2015)(Browning, J.)("The Due Process Clause of the Fourteenth Amendment protects the right to privacy.").

Grayson removed the case to Federal District Court on March 22, 2017.  <u>See</u> Notice of Removal, filed March 22, 2017 (Doc. 1).  He filed an answer on the same day.  <u>See</u> Defendant's Answer to Complaint, filed March 22, 2017 (Doc. 4).  On March 24, 2017, Grayson filed the Motion to Dismiss.  He argues: (i) to the extent Jennings is suing Grayson in his official capacity, Grayson is not a "person" subject to suit, <u>see</u> Motion to Dismiss § A, at 2; (ii) Grayson is protected by absolute prosecutorial immunity, <u>see</u> Motion to Dismiss § B, at 2-3; and (iii) there is no private right to action under HIPAA, <u>see</u> Motion to Dismiss § C, at 3.

Jennings filed two letters pertaining to discovery, but did not otherwise respond to the Motion to Dismiss.  <u>See</u> Letter from Gloria T. Jennings to Judge Browning (dated May 2, 2017), filed May 9, 2017 (Doc. 7); Letter from Gloria T. Jennings to Judge Browning (dated June 6, 2017), filed June 13, 2017 (Doc. 8).  In both Letters, Jennings asks the Court to provide a transcript of the April 20, 2016, plea conference to verify her allegations against Grayson.  <u>See</u> May 2, 2017 Letter at 1; June 6, 2017 Letter at 1.

## LAW REGARDING REVIEW OF PRISONER COMPLAINTS

Section 1915(A) of Title 28 of the United States Code imposes a mandatory obligation on district courts to screen "before docketing, if feasible, or in any event, as soon as practicable after

docketing, a complaint in a civil action in which a prisoner[2] seeks redress from a governmental entity or officer or employee of a government entity." 28 U.S.C. § 1915A(a). Section "1915A applies to all prison litigants, without regard to their fee status, who bring civil suits against a governmental entity, officer, or employee." Plunk v. Givens, 234 F.3d 1128, 1129 (10th Cir. 2000). The independent duty to screen prisoner complaints therefore extends to removed cases and cases where a motion to dismiss is pending. See generally Plunk v. Givens, 234 F.3d at 1129. On review, the court is required to dismiss the action if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Rule 12(b)(6) guides review under § 1915A. See Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007). To resist dismissal under that rule, the plaintiff must frame a complaint that contains sufficient facts to "'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. Section 1915A expands this inquiry, however, by granting courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims" that the record belies. See Neitzke v. Williams, 490 U.S. 319, 327 (1989). See Lee v. Maye, 589 F. App'x 416 (10th Cir. 2015)(applying Neitzke v. Williams to § 1915A).

---

[2]Congress defines the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c). Jennings was incarcerated when she filed the Complaint and is still incarcerated. She is therefore a prisoner as § 1915A defines that term. See Brown v. Eppler, 725 F.3d 1221, 1230 (10th Cir. 2013)(holding that the Prison Litigation Reform Act applies to individuals who are incarcerated at the time of filing).

Where the prisoner is proceeding pro se, the "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellman, 935 F.2d 1106, 1110 (10th Cir. 1991). If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarty with pleading requirements." Hall v. Bellman, 935 F.2d at 1110. At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." Hall v. Bellman, 935 F.2d at 1110.

Finally, in deciding whether to dismiss the complaint on screening, the Court must consider whether to allow the plaintiff an opportunity to amend the complaint. See Reynoldson v. Shillinger, 907 F.2d 124, 126 (10th Cir. 1990). The Court should freely give leave to amend "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements. . . ." Reynoldson v. Shillinger, 907 F.2d at 126. The Court need not, however, grant leave to amend if any amended claims would also be subject to immediate dismissal under rule 12(b)(6) or § 1915A. See Hall v. Bellman, 935 F.2d at 1109; Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004).

## LAW REGARDING PROSECUTORIAL IMMUNITY

Prosecutors are absolutely immune from suit for actions "taken in connection with the judicial process," including "initiating a prosecution and . . . presenting the State's case." Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991)(citing Imbler v. Pachtman, 424 U.S. 409, 431 (1976)); Ysais v. New Mexico Judicial Standard Com'n, 616 F. Supp. 2d 1176, 1188 (D.N.M. 2009)(Browning, J.)(quoting Imbler v. Pachtman, 424 U.S. at 431). Examples of protected actions include: (i) evidence-gathering; (ii) the evaluation and

presentation of evidence; (iii) the determination of whether probable cause exists; (iv) appearance and argument in court; and (v) the determination of what information to show the court.  See Nielander v. Board of County Com'rs., 582 F.3d 1155, 1164 (10th Cir. 2009); Burns v. Reed, 500 U.S. 478, 492 (1991).

Prosecutorial immunity typically does not attach to those actions that are primarily investigative or administrative in nature or where the prosecutor "plays a merely ministerial role."  Gerhardt v. Mares, 179 F. Supp. 3d 1006, 1031 (D.N.M. 2016)(Browning, J.).  "In making the distinction between these prosecutorial and nonprosecutorial investigative and administrative activities, the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role."  Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991)(quoting Rex v. Teeples, 753 F.2d 840, 843 (10th Cir.), cert. denied, 474 U.S. 967 (1985)).  See Mata v. Anderson, 760 F. Supp. 2d 1068, 1089 (D.N.M. 2009)(Browning, J.)(prosecutors have absolute immunity where complained of conduct "f[alls] on the advocacy side of the spectrum").

Because the immunity analysis focuses on the nature of the function performed, courts do not consider "the harm that the conduct may have caused or the question of whether it was lawful."  Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993).  "While this harsh rule may 'leave the genuinely wronged [litigant] . . . without civil redress against a prosecutor whose malicious or dishonest action deprives him' of a fundamental right, the 'alternative of qualifying a prosecutor's immunity would disserve the broader public interest.'"  B.T. ex rel. G.T. v. Santa Fe Public Schools, 506 F. Supp. 2d 718, 726 (D.N.M. 2007)(Browning, J.)(quoting Imbler v. Pachtman, 424 U.S. at 427).  Justice Powell explained in Imbler v. Pachtman: "[A] prosecutor inevitably makes many decisions that could engender colorable claims of constitutional

deprivation. Defending there decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." Imbler v. Pachtman, 424 U.S. at 425-26.

In New Mexico, prosecutors who are sued for money damages enjoy the same immunity in state or federal court, provided "their actions [are] taken in performance of their roles as integral parts of the judicial process." Collins on Behalf of Collins v. Tabet, 111 N.M. 391, 396, 806 P.2d 40, 45 (1991)(internal quotations omitted). See Johnson v. Lally, 118 N.M. 795, 797, 887 P.2d 1262, 1264 (Ct. App. 1994)("Because of absolute prosecutorial immunity, Defendant cannot be sued for monetary damages."). Like the United States Court of Appeals for the Tenth Circuit, New Mexico courts "examine the nature of the functions with which a particular official . . . has been lawfully entrusted, and . . . seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Collins on Behalf of Collins v. Tabet, 1991 -NMSC- 013, 806 P.2d at 45 (quoting Forrester v. White, 484 U.S. 219, 224 (1988)).

**ANALYSIS**

Grayson argues, among other things, that he is absolutely immune from Jennings' claims under HIPAA and the Fourteenth Amendment. It is not entirely clear whether Jennings seeks redress for the alleged constitutional violation under 28 U.S.C. § 1983, the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1, or both. The Court need not resolve this ambiguity, however, because, under the federal statute, Grayson is immune from suit, and the Court will remand any state claims.

**I.      GRAYSON IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY.**

Jennings' primary allegation against Grayson is that he revealed her medical information

in open court to refute her claim that she was not receiving the correction medication.  See
Complaint ¶ 5, at 2; id. ¶ 2, at 3-4.  As discussed above, a prosecutor's "appearance in court . . .
and . . . presentation of evidence at that hearing are protected by absolute immunity."  Burns v.
Reed, 500 U.S. at 492.  See Nielander v. Board of County Com'rs., 582 F.3d at 1164
(prosecutors are immune based on their "determination of what information to show the court").
At least two courts have held such immunity extends to instances where, as here, a prosecutor
discloses medical information during a hearing.  See, e.g., Blackston v. Vogrin, 404 F. App'x
718 (4th Cir. 2010)(unpublished)(stating that prosecutor enjoyed absolute immunity from
prisoner's claim that he revealed medical information during a sentencing hearing); Boyd v.
Bergen County Jail, 2007 WL 1695736, at *3 (D.N.J. 2007)(stating that prosecutor was entitled
to absolute immunity where she inquired about inmate's prescription medications during a
hearing.  The Court agrees and concludes Grayson is not liable for his in-court statement.

    To the extent Jennings seeks to assert claims based on Grayson accessing -- rather than
disclosing -- her medical information, Grayson is also immune.  Jennings does not allege that
Grayson conducted any unlawful investigation.  See, e.g., Pfeiffer v. Hartford Fire Ins. Co., 929
F.2d at 1491 (analyzing whether prosecutor's unauthorized telephone calls constituted an
improper investigation sufficient to destroy immunity).  Instead, Grayson received the
information from the San Miguel County Detention Facility in preparation for the plea
conference and after she put her medication at issue at the arraignment hearing.  See Complaint ¶
5, at 2; id. ¶ 2, at 3-4.  Grayson is therefore immune from any claims stemming from his
discussion of Jenning's medical information at the April 20, 2016, hearing.

    The Court will dismiss the federal claims in the Complaint pursuant to its screening
function under 28 U.S.C. § 1915A and in accordance with Grayson's request for dismissal under

rule 12(b)(6). Prosecutors enjoy absolute immunity when acting within their official capacity.

See Restatement (Second) of Torts § 656 (June 2017 update). Even if prosecutorial immunity

did not extend to the disclosure challenged in this case, HIPAA does not provide a private right

of action.[3] Because Jennings only alleges wrongdoing by an official who is immune from suit,

the Court will not grant leave to amend. See Hall v. Ballmon, 935 F.2d at 1109; Bradley v. Val-

Mejias, 379 F.3d at 901. To the extent any New Mexico tort claims exist, the Court remands

them to State Court, even if it is likely Grayson would still enjoy immunity under New Mexico

---

[3]In 1979, the Supreme Court of the United States held that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). Evaluating the same question more than two decades later, the Supreme Court reaffirmed its earlier position in Alexander v. Sandoval, 532 U.S. 275 (2001), indicating that "private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. at 286. Wherever a statute does not expressly authorize a private right of action, such a right may be implied under some circumstances if four criteria are met, see Cort v. Ash, 422 U.S. 66, 78 (1975), criteria that the Tenth Circuit has condensed into a single inquiry: "whether Congress expressly or by implication intended to create a private cause of action." Boswell v. Skywest Airlines, 361 F.3d 1263, 1267 (10th Cir. 2004)

    To assess whether HIPAA grants a private right of action, the Court looks first to the text for any language creating this right and to HIPAA's statutory structure, and then to HIPAA's legislative history if the text and statutory structure do not convincingly resolve the inquiry. In 42 U.S.C. § 1320d-6, HIPAA's codified language reads as follows: "A person who knowingly and in violation of this part . . . discloses individually identifiable health insurance information to another person . . . shall be punished as provided in subsection (b) of this section." 42 U.S.C. § 1320d-6(a). Yet no HIPAA section contains any language conferring privacy rights upon any specific class of persons, and 42 U.S.C. § 1320d-6 focuses on regulating persons who might have access to individuals' health information, not on the individuals who privacy may be at risk. See 42 U.S.C. § 1320d-6. Consequently, HIPAA's statutory text displays no intent to create a private right of action under 42 U.S.C. § 1320d-6. Similarly, HIPAA's statutory structure precludes implication of a private right of action, leading the Court to conclude that HIPAA does not intend to create a private right of action. Other federal district courts have come to this same conclusion. See, e.g., Wright v. Combined Ins. Co. of Am., 959 F. Supp. 356, 363 (N.D. Miss. 1997)(Davidson, J.)("In HIPAA, the undersigned cannot find any 'manifest congressional intent' to create a new federal cause of action."); Means v. Ind. Life & Accident Ins. Co., 963 F. Supp. 1131, 1135 (M.D. Ala. 1997)(Albritton, J.)("[T]he court finds no evidence of congressional intent to create a private right of action under the HIPAA."); Brock v. Provident Am. Ins. Co., 144 F. Supp. 2d 652, 657 (N.D. Tex. 2001)(Buchmeyer, C.J.); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F. Supp. 2d 1176, 1180 (D. Wyo. 2001)(Brimmer, J.).

law.  See <u>Collins on Behalf of Collins v. Tabet</u>, 111 N.M. at 396, 806 P.2d at 45 (stating that prosecutors are immune under New Mexico law for actions taken in connection with the judicial process); <u>Wolff v. United States</u>, 76 F. App'x 867, 870 (10th Cir. 2003)(unpublished)(stating that federal district courts are not required to remand claims that would inevitably be dismissed by the state court).

## II.   <u>JENNINGS IS NOT ENTITLED TO ADDITIONAL DISCOVERY.</u>

In two recent letters, Jennings asks the Court to provide a transcript of the April 20, 2016 hearing.  <u>See</u> May 2 Letter at 1; June 6 Letter at 1.  She argues "the transcripts will prove [her] allegations in the full."  May 2 Letter at 1.  This evidence is unnecessary, because the Court assumed her allegations were true and took judicial notice of the Plea Minutes.  The Court will therefore deny Jennings' request for the transcript.

**IT IS ORDERED** that Grayson's Defendant's Motion to Dismiss, filed March 24, 2017 (Doc. 5), is granted in part.  All federal claims in the Plaintiff's Complaint (Tort), filed February 22, 2017 (Doc. 1-2), are dismissed with prejudice.  The request for additional discovery contained in: (i) the Letter from Gloria T. Jennings to Judge Browning (dated May 2, 2017), filed May 9, 2017 (Doc. 7); and (ii) the Letter from Gloria T. Jennings to Judge Browning (dated June 6, 2017), filed June 13, 2017 (Doc. 8), is denied.  The Court will enter a separate judgment consistent with this ruling.

UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Gloria T. Jennings
Springer, New Mexico

*Plaintiff pro se*

- 11 -

Daniel J. Macke
Brown Law Firm
Albuquerque, New Mexico

*Attorneys for Defendant James Grayson*